

COPY

**FILED IN THE**
**UNITED STATES DISTRICT COURT**
**DISTRICT OF HAWAII**

SEP 2 0 2004

at \_\_\_\_ o'clock and \_\_\_\_ min. \_\_\_ M
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim. No. 03-00370 HG |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S ORAL** |
| | ) | **MOTION TO DISMISS THE** |
| | ) | **INDICTMENT** |
| vs. | ) | **AND** |
| | ) | **DENYING DEFENDANT'S MOTION TO** |
| Raymond Nauta Reyes, | ) | **SUPPRESS PHYSICAL EVIDENCE AND** |
| | ) | **STATEMENT** |
| Defendant. | ) | |
| ——————————————— | ) | |

## ORDER DENYING DEFENDANT'S ORAL MOTION TO DISMISS THE INDICTMENT
### AND
### DENYING DEFENDANT'S MOTION TO SUPPRESS
### PHYSICAL EVIDENCE AND STATEMENT

Defendant moves to dismiss the charges against him on the basis of the Government's loss of photographs relevant to this case. Defendant also moves to suppress physical evidence seized from his person and his vehicle as well as a written statement he made following the seizure of the physical evidence. Defendant argues that the evidence was seized and statement obtained as a result of an unconstitutional, warrantless detention and a search of his person and his car. The Government argues that the detention and search of Defendant and his vehicle were proper and

that Defendant's statement was obtained in accordance with constitutional requirements.  For the reasons set forth below, the Court DENIES Defendant's motion to dismiss the indictment and DENIES Defendant's motion to suppress evidence.

## PROCEDURAL HISTORY

On October 16, 2002, Defendant was arrested by officers of the Kauai Police Department on the basis of his unlawful possession of a gun.  He was released on bail the same day.

On October 18, 2002, Defendant was arrested at his home and transported to the Kauai Police Station where he was booked. Plaintiff was charged with promoting dangerous drugs in the third degree, possession of drug paraphernalia, ownership or possession of a prohibited firearm, and resisting arrest.

On July 24, 2003, a federal grand jury returned an Indictment against Defendant.  The Indictment charged Defendant with 2 counts: Count 1 charges Defendant with knowing and intentional possession with intent to distribute 5 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a); and Count 2 charges Defendant with being a person convicted of a misdemeanor crime of domestic violence in possession of a firearm, in violation of 18 U.S.C. § 922(g)(9).

On July 25, 2003, a federal arrest warrant was issued for Defendant.  The arrest warrant referenced the two counts charged in the federal Indictment filed on July 24, 2003.  Defendant was

2



arrested pursuant to the warrant on July 30, 2003.

On March 31, 2004, a federal grand jury returned a First Superseding Indictment against Defendant.  The First Superseding Indictment charged Defendant with the same 2 counts charged in the original indictment, as well as a third count for knowing and intentional possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1) and (2).

On June 15, 2004, Defendant filed a Motion to Suppress Statement and Other Items of Evidence.

On June 29, 2004, the Government filed a memorandum in opposition to Defendant's motion to suppress.

On July 21, 2004, a federal grand jury returned a Second Superseding Indictment against Defendant.  The Second Superseding Indictment charges Defendant with the same 3 counts charged in the First Superseding Indictment, and, additionally, contains Sentencing Allegations.  The Sentencing Allegations assert that, with respect to Count 1, on or about October 16, 2002, Defendant knowingly and intentionally possessed with intent to distribute at least 20 grams, but less than 35 grams, of methamphetamine of at least 80% purity and that Defendant possessed a dangerous weapon.  The Sentencing Allegations further assert that, with respect to Counts 2 and 3, Defendant used or possessed a firearm or ammunition in connection with another felony offense.

On August 3, and 10, 2004, the Court heard testimony and oral argument in support of the parties' respective positions on Defendant's motion to suppress.  Defendant orally moved to dismiss the indictment.  The Court took Defendant's motions to dismiss the indictment and to suppress evidence under submission.

On August 12, 2004, Defendant filed a Post-hearing Memorandum in Support of Defendant's Motion to Suppress Statement and Other Items of Evidence Filed June 15, 2004.  Defendant's post-hearing memorandum supplemented the probable cause analysis contained in Defendant's original memorandum with analysis under the reasonable suspicion standard articulated by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1 (1968).

### I.   **Defendant's Oral Motion to Dismiss the Indictment**

At the hearing on Defendant's Motion to Suppress Evidence, Defendant orally moved to dismiss the indictment.  Defendant argued that the Government's loss of three photographs taken of the exterior and interior of Defendant's vehicle as it appeared on October 16, 2002 warranted dismissal of the charges against Defendant.

As a general matter, the Court notes that even where the Government has engaged in misconduct, dismissal of an indictment is considered a drastic step and accordingly is a disfavored remedy.  See United States v. Rogers, 751 F.2d 1074, 1076-77 (9th

4

Cir. 1985) (citing <u>United States v. Blue</u>, 384 U.S. 251, 255
(1966)). The United States Court of Appeals for the Ninth
Circuit has held that an indictment may not be dismissed on the
basis of misconduct by the government absent prejudice to the
defendant. <u>See</u> <u>id.</u> at 1077 (citing <u>United States v. Sears,
Roebuck & Co., Inc.</u>, 719 F.2d 1386, 1391-92 (9th Cir. 1983),
<u>cert.</u> <u>denied</u>, 465 U.S. 1079 (1984)).

In support of his motion to dismiss the indictment,
Defendant cited <u>United States v. Agurs</u>, 427 U.S. 97 (1976). In
<u>Agurs</u>, the United States Supreme Court held that a prosecutor's
failure to tender the criminal record of the murder victim to the
defense did not deprive the defendant of a fair trial. <u>Id.</u> at
114. The Court noted that the defense had not requested the
victim's criminal record, that the criminal record did not give
rise to any inference of perjury, and that, when considered in
the context of the entire record, the victim's criminal record
did not alter the trial judge's finding that the defendant was
guilty beyond a reasonable doubt. <u>Id.</u> Neither the opinion of
the Court nor the dissenting opinion in <u>Agurs</u> contained any
discussion of the circumstances under which dismissal of a
criminal indictment is appropriate.

Defendant seeks to characterize the Government's loss of
photographs as misconduct. Even if Defendant could demonstrate
that the photographs were lost as a result of misconduct on the

5

part of the Government, however, the Court cannot dismiss the indictment absent a showing of prejudice to Defendant. <u>See</u> <u>Rogers</u>, 751 F.2d at 1077 (citing <u>Sears, Roebuck & Co., Inc.</u>, 719 F.2d at 1391-92).

Defendant has presented nothing to suggest that the unavailability of the photographs will prejudice Defendant from receiving a fair trial. Cases are frequently prosecuted in the absence of photographs depicting the circumstances underlying the case. The lost photographs in issue depict Defendant's vehicle and the location of the gun therein as they appeared at the time of Defendant's arrest on October 16, 2002. There is no question as to whether Defendant had a gun in the car: testimony offered by both Defendant and Sgt. Shimabukuro established the fact that Defendant had a gun in his car and told the officers that, at the time of the encounter on October 16, 2002.

The Court recognizes that the photos might be useful with respect to Defendant's motion to suppress and to the jury with respect to the trial. The Court, however, is satisfied that it can decide Defendant's motion, and that Defendant will receive a fair trial, in the absence of the photographs. With respect to the motion to suppress, both sides have presented substantial testimony regarding the location and situation of Defendant's vehicle and the gun recovered therein. Suppression motions and trials frequently are resolved exclusively on the basis of

testimonial evidence.  Defendant has not presented anything to
suggest that testimonial evidence as to the appearance of
Defendant's vehicle and the gun found therein at the time of the
events in question will be insufficient in this case.

The Court has not been presented with evidence of misconduct
by the Government.  Even if the Court were to characterize the
Government's loss of photographs as misconduct, Defendant has not
offered any evidence of prejudice resulting from the loss.  The
Court, therefore, does not dismiss the indictment.  See Rogers,
751 F.2d at 1077 (citing Sears, Roebuck & Co., Inc., 719 F.2d at
1391-92).

## II.  Defendant's Motion to Suppress Evidence and Statement

Defendant seeks the suppression of evidence seized by law
enforcement officers from his person on October 16, 2002 and from
his vehicle on October 16, and 17, 2002.  Defendant additionally
seeks the suppression of a written statement Defendant gave to
law enforcement officers on October 18, 2002.

### OVERVIEW OF UNDISPUTED FACTS

The following undisputed facts were established at the
hearing on Defendant's motion to dismiss:

On October 16, 2002, at approximately 6:00 p.m., Sergeant
Trent Shimabukuro of the Kauai Police Department received an
anonymous phone call from an unnamed individual.  The caller
reported that an individual named "Ray Regis" was in his car at

7

the Kikiaola Boat Harbor and was selling drugs.  The caller
described the car as a white compact vehicle and provided the
vehicle's license plate number, KPC-207.

Upon concluding the conversation with the anonymous caller,
Sgt. Shimabukuro proceeded to the Kikiaola Boat Harbor in his
police vehicle.  The boat harbor is approximately one-and-a-half
miles away from the police station, and Sgt. Shimabukuro arrived
at the boat harbor shortly after leaving the station.

When Sgt. Shimabukuro arrived at the boat harbor, Defendant
Raymond Reyes was at the harbor sitting in his parked car, a
white Ford four-door sedan with Hawaii license plate number KPC-
207, the same license plate number given by the anonymous caller.
While sitting in his car, Defendant was speaking to two men named
Brandon Pagala and Casey Sal Agena.  Pagala and Agena were
sitting in a green pickup truck, which was parked facing the
opposite direction of Defendant's car so that the driver's sides
of Defendant's vehicle and the green pickup truck were facing
each other.  The two vehicles were parked in a large field in the
boat harbor near the tree line.  There were no other vehicles
present in the large field.  Defendant's car was facing the
direction of the road that led to the entrance of the boat
harbor.  The green pickup truck was facing the tree line.

As Sgt. Shimabukuro approached the vehicles, he observed
Defendant in the white vehicle, which matched the description

provided by the anonymous caller.  Sgt. Shimabukuro recognized Defendant as Raymond Reyes.  Sgt. Shimabukuro knew of Defendant from having been born and raised on the west side of Kauai, where Defendant lives.  Through his work as a police officer, Sgt. Shimabukuro was aware of Defendant's involvement in a domestic violence investigation.

As Sgt. Shimabukuro approached the vehicles, he also observed that the green pickup truck next to Defendant's vehicle was occupied by two individuals.  Without identifying the occupants of the green pickup truck, Sgt. Shimabukuro immediately ordered them to leave.  Pagala and Agena, the occupants of the green pickup truck, complied with Sgt. Shimabukuro's order and left the boat harbor.

Upon Sgt. Shimabukuro's approach to Defendant's vehicle, Defendant stepped out of the vehicle, leaving the driver's door open.  Sgt. Shimabukuro informed Defendant of the purpose of his investigation and about having received the anonymous tip earlier that day.

During the course of the encounter, Officer Channing Tada, also of the Kauai Police Department, arrived on the scene. Officer Tada was familiar with Defendant from having worked on a domestic violence case involving Defendant.  Specifically, Officer Tada had investigated a case in July of 2002, which resulted in Defendant's arrest for family abuse.  Officer Tada

9

believed that the arrest resulted in Defendant's prosecution and conviction of third degree assault.

Sometime prior to or after Officer Tada's arrival, but out of his hearing, Defendant told Sgt. Shimabukuro that he had a gun in his car. Defendant testified to his telling Sgt. Shimabukuro that he had a gun in the car.

Ultimately, Sgt. Shimabukuro and Officer Tada placed Defendant under arrest. Defendant resisted and the two officers each grabbed one of Defendant's arms to place handcuffs on Defendant.

Once Defendant was under arrest and handcuffed, the officers searched his person and recovered six .38 caliber bullets from one of his pockets and a pipe from another pocket. In his police report, Sgt. Shimabukuro described the pipe as having a neck about four inches long attached to a small bowl with a hole on the top of it. Sgt. Shimabukuro indicated that there was a small amount of a white powdery substance at the bottom of the bowl.

Following Defendant's arrest and the officers' search of his person, Officer Tada recovered the gun from Defendant's car and Defendant was taken to the police station. Defendant's vehicle was secured and transported to the Kauai Police Station, where it was placed in storage pending issuance of a search warrant.

At the police station, officers conducted an inventory search of Defendant's person and recovered a plastic packet

10



containing a substance later determined to be methamphetamine. Defendant ultimately posted bail and was released on the same day.

The following day, October 17, 2002, officers executed a search warrant for Defendant's vehicle. The search resulted in the recovery of several ziplock bags containing methamphetamine, as well as a digital scale, empty ziplock bags, and $109.00 in U.S. currency. A total of approximately 29.3 grams of methamphetamine were recovered from Defendant's vehicle.

On October 18, 2002, two days after the initial encounter at the boat harbor, Defendant was arrested at his home and transported to the police station. He was informed of and waived his <u>Miranda</u> rights, and he gave a written statement to the police.

The facts that are in dispute will be discussed within the body of the analysis.

<u>**ANALYSIS**</u>

A. <u>Reasonable suspicion to detain and question a suspect</u>

It is well settled that a law enforcement officer may stop and briefly detain an individual for investigative purposes "if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989) (quoting <u>Terry</u>, 392 U.S. at 30); <u>see also Hibel v. Sixth</u>

11

Judicial District Court of Nevada, Humboldt County, __ U.S. __, 124 S. Ct. 2451, 2458 (June 21, 2004).

The level of suspicion required for a Terry stop is less demanding than what is required to establish probable cause. Sokolow, 490 U.S. at 7 (citation omitted). In explaining the distinction between the reasonable suspicion and probable cause standards, the United States Supreme Court has indicated that reasonable suspicion can be established on the basis of a lesser quantity of information than that required to establish probable cause and on the basis of information that is less reliable than that required for probable cause. See Alabama v. White, 496 U.S. 325, 330 (1990).

Anonymous tips, standing alone, generally do not demonstrate the basis or veracity of the informant's knowledge in a manner sufficient to provide the reasonable suspicion necessary to justify an investigatory detention. See United States v. Walker, 7 F.3d 26, 30 (2d Cir. 1993) (citing White, 496 U.S. at 329). The United States Supreme Court has held that "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." White, 496 U.S. at 330. The United States Court of Appeals for the Ninth Circuit has upheld a finding of reasonable suspicion based upon information provided by an anonymous tipster where law

12

enforcement officers corroborated the information through independent police investigation.  See United States v. Alvarez, 899 F.2d 833, 837 (9th Cir. 1990).

Courts have recognized an officer's knowledge of a suspect's past criminal activity as a relevant factor in evaluating whether the officer had reasonable suspicion to detain the suspect.  See, e.g., Joshua v. DeWitt, 341 F.3d 430, 446 (6th Cir. 2003); United States v. Walden, 146 F.3d 487, 491 (7th Cir. 1998) ("a criminal record in conjunction with other information can form the basis of a reasonable suspicion"); United States v. Hoosman, 62 F.3d 1080, 1081 (8th Cir. 1995) (listing among the factors supporting a finding of reasonable suspicion the officer's knowledge that the defendant had a history of drug trafficking).

In evaluating the validity of an investigative detention, courts consider the totality of the circumstances.  Sokolow, 490 U.S. at 7-8.

B.  **Sgt. Shimabukuro's questioning and detention of Defendant**

Sgt. Shimabukuro had reasonable suspicion that justified his detention of Defendant for a brief period of time while he was attempting to obtain information.  Several undisputed facts support such a finding.

1.  **Undisputed facts establishing reasonable suspicion to question and detain Defendant**

There is no dispute that upon Sgt. Shimabukuro's approach to Defendant's vehicle in the late afternoon of October 16, 2002,

13

Defendant stepped out of the vehicle, leaving the driver's door open. At the time, Defendant was holding a closed, styrofoam container as well as an unidentified blue object. Sgt. Shimabukuro could not tell what the blue item was and suspected that it was a weapon, which Defendant was trying to conceal by holding it beneath the styrofoam container. Concerned for his own safety, Sgt. Shimabukuro drew his weapon and ordered Defendant to drop the styrofoam container. Defendant dropped the container and the blue object, enabling Sgt. Shimabukuro to see that Defendant was not carrying a weapon. Sgt. Shimabukuro observed that the blue object was a straw that had been cut at angles at both ends and was approximately four to five inches long. Defendant acknowledged that he had not been using the straw as a drinking utensil and that it was the type of straw commonly used to measure drugs. Sgt. Shimabukuro then reholstered his gun and proceeded to explain to Defendant the reason he was questioning Defendant.

It also is undisputed that at some point during the brief encounter near Defendant's vehicle, Defendant told Sgt. Shimabukuro that he had a gun in his car. Defendant and Sgt. Shimabukuro each testified to Defendant's statement to Sgt. Shimabukuro that Defendant had a gun in his car. Both men also testified to the fact that during the encounter, Defendant proceeded to back away from Sgt. Shimabukuro, ultimately walking

from the area beside the driver's door to the back end of the
vehicle.

2. **Findings regarding disputed facts relevant to Sgt.
Shimabukuro's decision to question and detain Defendant**

With respect to the initial stages of Sgt. Shimabukuro's
encounter with Defendant, the Court was presented with
inconsistent testimony by defense and Government witnesses as
follows:

Sgt. Shimabukuro testified that as he approached Defendant
sitting in his vehicle, he ordered Defendant to place his hands
on the steering wheel of the vehicle because he could not see
Defendant's hands and he wanted to ensure that Defendant was not
holding a weapon. Sgt. Shimabukuro testified that he then
ordered the occupants of the green pickup truck to leave the
Harbor. Sgt. Shimabukuro explained that his instructions to
Defendant and the occupants of the truck both were based upon
Sgt. Shimabukuro's need to ensure his own safety. He explained
that he needed to see Defendant's hands to ensure Defendant was
not armed and that his odds of remaining safe increased with only
one person present, versus three.

Sgt. Shimabukuro testified that Defendant did not place his
hands on the steering wheel as ordered and that Defendant
instead, without any instruction or request by Sgt. Shimabukuro,
exited his vehicle. Sgt. Shimabukuro described Defendant's
demeanor upon exiting the car as uneasy, agitated, and defensive.

15

Sgt. Shimabukuro explained that he wanted to question Defendant regarding the information provided by the anonymous caller, and that he became more suspicious when Defendant disobeyed his instruction to place his hands on the steering wheel, and then existed the car in an agitated and defensive manner. Sgt. Shimabukuro also testified that when he informed Defendant of the allegations made by the anonymous caller, Defendant responded by denying that he was selling drugs and continuing to repeat questions about Sgt. Shimabukuro's presence, despite the fact that the officer had just relayed his conversation with the anonymous caller.

Sgt. Shimabukuro described Defendant's actions during their conversation. He testified that, Defendant, without any orders to do so, slowly started to move from the area directly outside the driver's side door of his car toward the rear, bumper area. Defendant, himself, testified to his retreating away from Sgt. Shimabukuro during their conversation, toward the rear of his car. Sgt. Shimabukuro testified that he followed Defendant while maintaining a safe distance of approximately five feet. Sgt. Shimabukuro also testified that as he and Defendant were moving toward the back of the vehicle, his gun was secured in his holster.

Sgt. Shimabukuro and Defendant both testified that while moving toward the back of Defendant's vehicle, Defendant stated

16

that he had a weapon in the car.  Sgt. Shimabukuro testified that while he was alongside the car he glanced in through the space where Defendant had left the door open, and observed a gun on the floor below the driver's seat.  He stated that he was within five feet of the car when he viewed the weapon.  He also testified that Defendant told him he had the gun for protection.

Defendant offered a different account of his encounter with Sgt. Shimabukuro.  Defendant testified that when Sgt. Shimabukuro pulled up to the location where Defendant was sitting in his car, he "charged" out of the police car in an aggressive manner, yelling at the occupants of the green pickup truck to get out of the harbor and yelling at Defendant to "get the fuck out of the car."  Defendant testified that he exited his vehicle in response to Sgt. Shimabukuro's order that he do so.  According to Defendant, as soon as he exited his car, Sgt. Shimabukuro told him that he was being arrested for resisting arrest.

Some of Defendant's testimony regarding his encounter with Sgt. Shimabukuro was inconsistent and unclear.  Defendant's initial testimony regarding his conversation with Sgt. Shimabukuro about the unidentified blue object was similar to Sgt. Shimabukuro's account of the conversation.  Defendant testified that when asked about the blue object, he dropped the styrofoam container holding his food.  Later in his testimony, however, when describing the subsequent efforts by Sgt.

17

Shimabukuro and Officer Tada to place handcuffs on him, Defendant stated that the styrofoam container flew out of his hands. None of the testimony indicated that Defendant picked up the styrofoam container after he dropped it the first time, so it is unclear how it could have flown out of his hands during his arrest, when he had already dropped it previously.

Defendant also gave inconsistent testimony regarding his possession of the blue straw. Initially, during his direct examination, Defendant testified that he did not have the blue straw described by Sgt. Shimabukuro. Defendant later contradicted his initial testimony, acknowledging that he had the blue straw in his hands along with the styrofoam container both initially, when he was in his car, and after he exited his car. Defendant acknowledged that he had not been using the straw as a drinking utensil and that it was the type of straw commonly used to measure drugs.

In addition to testifying himself, Defendant offered the testimony of Casey Agena and Brandon Pagala, the individuals sitting in the green pickup truck parked next to Defendant's vehicle at the time Sgt. Shimabukuro arrived at the Kikiaola Boat Harbor.

Casey Agena offered conflicting testimony as to the circumstances of Sgt. Shimabukuro's approach to the vehicles. On direct examination he testified that Sgt. Shimabukuro ordered

18

Pagala and him to leave the Harbor and Defendant to get out of his car. On cross-examination, however, Agena testified that he heard Sgt. Shimabukuro say something to Defendant, but that he didn't know exactly what--whether it was an order to get out of the car or to put his hands somewhere. Ultimately, Agena testified that he couldn't really tell the Court for sure what Sgt. Shimabukuro said to Defendant.

Brandon Pagala testified as to his recollection of the events of October 16, 2002. Pagala testified that Sgt. Shimabukuro had ordered Agena and him to leave the harbor and Defendant to get out of his car. In contrast to his ability to recall the events of October of 2002, when asked about an interview Pagala had with law enforcement officers in February of 2003, four months after the October 16, 2002 incident, Pagala testified that he could not recall anything said by the officers nor anything he said to them.

The Court finds that Defendant has failed to present credible evidence in support of his version of the facts. The Court finds that Defendant and Brandon Pagala were not credible witnesses. Casey Agena was credible to the extent that his testimony indicated that he really was not sure what Sgt. Shimabukuro said to Defendant upon approaching Defendant's vehicle.

The Court finds illogical Defendant's assertion that Sgt.

19

Shimabukuro told Defendant that he was arresting Defendant for resisting arrest immediately upon Defendant's exit from his vehicle.

First, the charge of "resisting arrest", by definition, requires a predicate offense for which the suspect was being arrested. If Defendant was being charged with resisting arrest, it would have been in conjunction with or would arise from an attempt to arrest for a separate offense. It is illogical, therefore, that a law enforcement officer's first indication to Defendant of his arrest was that Defendant was being arrested for "resisting arrest."

Second, Defendant's total account of the facts is fundamentally illogical. Defendant suggests the following unusual chain of events:

first, Sgt. Shimabukuro announced that Defendant was being arrested for resisting arrest;

second, Sgt. Shimabukuro explained to Defendant that he was questioning Defendant because he had received an anonymous call indicating that Defendant was dealing drugs at the Kikiaola Boat Harbor;

third, Sgt. Shimabukuro questioned Defendant about a blue object that Sgt. Shimabukuro suspected was a weapon;

fourth, Sgt. Shimabukuro proceeded to follow Defendant toward the back of Defendant's vehicle;

20

fifth, Defendant told Sgt. Shimabukuro that he had a gun in his car; and

finally, Sgt. Shimabukuro and Officer Tada placed Defendant under arrest for resisting arrest.

The Court finds unconvincing Defendant's assertion that Sgt. Shimabukuro announced his intent to arrest Defendant at the outset of his contact with Defendant, but delayed actually placing Defendant under arrest until after explaining the basis of his investigation and engaging in other discussions with Defendant. Such a delay would have been particularly unlikely if Defendant had been resisting arrest or otherwise refusing to comply with Sgt. Shimabukuro's orders.

In addition to the logical deficiencies in Defendant's account of the facts, as the Court has indicated above, Defendant's testimony was inconsistent in multiple respects. Defendant's inconsistent testimony suggests a lack of credibility.

In addition to offering his own testimony, Defendant called Casey Agena and Brandon Pagala as witnesses. Defendant sought to elicit testimony from Agena and Pagala to support his claim that Sgt. Shimabukuro ordered Defendant out of his car upon arriving at the scene. Agena and Pagala, however, were not credible or helpful witnesses.

Casey Agena was unable to offer the testimony Defendant

21

sought to elicit.  While he did state on direct examination that
Sgt. Shimabukuro had ordered Defendant out of his vehicle, on
cross-examination Agena conceded that he couldn't really tell the
Court for sure what Sgt. Shimabukuro said to Defendant, and that
it was possible that Sgt. Shimabukuro had ordered Defendant to
put his hands somewhere.  Ultimately, Agena's testimony did not
support Defendant's version of the facts.

Brandon Pagala did maintain that he heard Sgt. Shimabukuro
order Defendant to get out of his car.  His testimony, however,
was not believable.  While claiming to recall the events of
October 16, 2002 sufficiently well to testify about them, Pagala
claimed to have no recollection at all of statements he made to
law enforcement officers in February of 2004 regarding the events
of October 16, 2002.  The Court finds unbelievable Pagala's claim
that he could recall statements that Sgt. Shimabukuro made to
Defendant nearly two years ago but yet he was completely unable
to recall statements he himself made to law enforcement officers
just six months ago, particularly where his own statements
related to the events of October 16, 2002.

The Court finds credible Sgt. Shimabukuro's assertion that
he arrived at the scene, ordered Defendant to place his hands on
the steering wheel, and ordered Casey Agena and Brandon Pagala to
leave the boat harbor.  The Court finds credible Sgt.
Shimabukuro's characterization of Defendant's demeanor upon

22

exiting his vehicle as uneasy, agitated, and defensive. The Court finds credible Sgt. Shimabukuro's testimony that he initially suspected that the blue object Defendant was holding with the styrofoam container was a weapon. The Court also finds credible Sgt. Shimabukuro's testimony that he was suspicious of Defendant's repeated questioning of him regarding his presence when he had just explained the basis of his investigation to Defendant. Finally, it is uncontradicted that during the encounter and prior to his arrest, Defendant stated to Sgt. Shimabukuro that he had a gun in his car.

### 3.  Sgt. Shimabukuro had reasonable suspicion to question and detain Defendant

Sgt. Shimabukuro had reasonable suspicion that justified his detention of Defendant for a brief period of time while he was attempting to obtain information. Sgt. Shimabukuro's decision to detain and question Defendant was based on the following:

(1) an anonymous phone call placed on October 16, 2002, at approximately 6:00 p.m. to Sgt. Shimabukuro, reporting that an individual named "Ray Regis" was in his car at the Kikiaola Boat Harbor and was selling drugs. The caller described the car as a white compact vehicle and provided the vehicle's license plate number, KPC-207;

(2) Sgt. Shimabukuro's observation, shortly after concluding the conversation with the anonymous caller, of a vehicle matching the description provided by the caller parked in a remote area of

the Kikiaola Boat Harbor;

(3) Sgt. Shimabukuro's observation of a green pickup truck parked beside the white sedan, facing the opposite direction such that the drivers of the two vehicles could easily communicate with each other;

(4) Sgt. Shimabukuro's recognition of the driver of the white compact vehicle as Raymond Reyes, a name similar to the name suggested by the anonymous caller, which was "Ray Regis";

(5) Sgt. Shimabukuro's knowledge, through his work as a police officer, of Defendant Raymond Reyes's involvement in a domestic violence investigation;

(6) Defendant's failure to comply with Sgt. Shimabukuro's instruction that he place his hands on the steering wheel of his vehicle so that Sgt. Shimabukuro could see them;

(7) Defendant's exit from his vehicle when Sgt. Shimabukuro instructed him to place his hands on the steering wheel;

(8) Defendant's uneasy, agitated, and defensive demeanor upon Sgt. Shimabukuro's approach to him; and

(9) Defendant's possession, following his exit from his car, of a blue object that Sgt. Shimabukuro thought might be a weapon.

Although Sgt. Shimabukuro's decision to investigate and detain Defendant was based, in part, on an anonymous tip, Sgt. Shimabukuro independently corroborated much of the information conveyed by the tipster and additionally relied on his own

24

observations.  See White, 496 U.S. at 330.  Sgt. Shimabukuro independently corroborated that a white vehicle with the license plate identified by the anonymous caller was at the location reported by the caller.  Sgt. Shimabukuro observed that the individual in the vehicle was Raymond Reyes, which sounded similar to, "Ray Regis," the name reported by the anonymous caller.

In addition to corroborating the information conveyed by the tipster, Sgt. Shimabukuro recognized Defendant as an individual previously involved in a domestic violence investigation.

Sgt. Shimabukuro also made certain independent observations at the scene, prior to detaining or questioning Defendant.  Upon arriving at the boat harbor, Sgt. Shimabukuro observed that Defendant's vehicle was parked in a remote spot at the boat harbor, directly beside and facing the opposite direction of another vehicle, occupied by two men.  The two vehicles were parked such that the driver of each car could face and communicate with one another.  Sgt. Shimabukuro testified that the manner in which the two vehicles were parked led him to conclude that the information provided by the tipster may have been accurate.  He also testified that Defendant's demeanor and actions during the encounter led him to be concerned about his own safety and suspicious of Defendant's activities at the boat harbor.

In consideration of the totality of the circumstances, the Court finds that Sgt. Shimabukuro reasonably suspected that Defendant was engaged in criminal activity at the time Sgt. Shimabukuro questioned and detained Defendant. See Alvarez, 899 F.2d at 837 (finding that an anonymous tip combined with officers' corroboration of the details of the tip and the officers' pre-stop observations gave rise to reasonable suspicion to make an investigatory stop). Such reasonable suspicion was sufficient to justify Sgt. Shimabukuro's questioning of Defendant upon arriving at Defendant's vehicle. See Hayes v. Florida, 470 U.S. 811, 816 (1985) ("[I]f there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information.").

**B.    Probable cause to arrest Defendant**

A court may find that officers had probable cause to arrest a suspect in the absence of an arrest warrant if, at the time the individual was arrested, "the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect has committed or was committing an offense." Adams v. Williams, 407 U.S. 143, 148 (1972) (internal quotations and citation omitted).

26

1.    **Findings of fact relevant to Defendant's arrest**

It is undisputed that prior to Defendant's arrest, Defendant stated to Sgt. Shimabukuro that he had a gun in his vehicle. Both Defendant and Sgt. Shimabukuro testified as such.   The Court has previously described the testimony given by both Defendant and Sgt. Shimabukuro regarding Defendant's retreat from Sgt. Shimabukuro toward the rear, bumper area of his vehicle.   In addition to the testimony discussed earlier in this Order, the following testimony was given regarding the circumstances of and basis for Defendant's arrest:

Sgt. Shimabukuro testified that while he was following Defendant as Defendant retreated toward the back of Defendant's vehicle, he glanced in through the space where Defendant had left the door open, and observed a gun on the floor below the driver's seat.  He stated that he was within five feet of the car when he viewed the weapon.  He also testified that Defendant told him he had the gun for protection.

Sgt. Shimabukuro testified that Officer Channing Tada of the Kauai Police Department arrived on the scene around the time he and Defendant were moving toward the back of Defendant's vehicle. Sgt. Shimabukuro stated that upon viewing the weapon in Defendant's car, he informed Defendant that he was under arrest for unlawful possession of a weapon, or "place to keep."  Officer Tada testified that, at the time of Defendant's arrest, he was

27

aware that Defendant had been arrested previously for family abuse and believed that Defendant had been prosecuted and convicted of third degree assault. Sgt. Shimabukuro testified that in an effort to arrest Defendant, he grabbed Defendant's left arm and Officer Tada grabbed Defendant's right arm. He explained that Defendant was resisting and, at one point, broke away from Sgt. Shimabukuro's grasp. According to Sgt. Shimabukuro, eventually he and Officer Tada regained control and were able to place handcuffs on Defendant.

Defendant offered a different account of his arrest. According to Defendant, as soon as he exited his car, Sgt. Shimabukuro told him that he was being arrested for resisting arrest. Defendant also testified about his backing away from Sgt. Shimabukuro during the encounter. Defendant testified that he did so because Sgt. Shimabukuro appeared to be drawing his gun and Defendant feared for his safety. Defendant stated that Sgt. Shimabukuro followed him as he walked toward the back of the car. He stated that while he was walking toward the back of his car, he told Sgt. Shimabukuro that he had a gun in the car. Rather than in full view on the floor, Defendant testified that the gun was located beneath the seat in his car.

Defendant testified that once Officer Tada arrived on the scene, he and Sgt. Shimabukuro grabbed him by his arms, and grabbed his thumb and small finger and spread them apart. He

28

testified that he reacted by pushing the officers away because they were hurting him. Despite having testified earlier that he dropped the styrofoam container holding his food when Sgt. Shimabukuro was asking him about the blue object, Defendant stated that while Sgt. Shimabukuro and Officer Tada were attempting to handcuff him the styrofoam package flew out of his hands. Defendant stated that he asked Sgt. Shimabukuro why he was being arrested and that Sgt. Shimabukuro responded "resisting arrest."

The Court finds that Defendant's testimony regarding the circumstances of his arrest is not credible. As indicated above with respect to the Court's finding of reasonable suspicion to question and briefly detain Defendant, Defendant's overall account of the facts is inconsistent and illogical. The Court finds that during Sgt. Shimabukuro's questioning of Defendant, Defendant stated that he had a gun. The Court finds credible Officer Tada's testimony that he was aware of Defendant's criminal history at the time he arrived at the boat harbor on October 16, 2002. The Court finds credible Sgt. Shimabukuro's testimony that, following Defendant's statement regarding the gun in his car, he and Officer Tada placed Defendant under arrest for unlawful possession of a gun, or "place to keep," and then proceeded to search Defendant and seize the gun from Defendant's vehicle.

2.  **Law enforcement officers had probable cause to arrest Defendant**

Sgt. Shimabukuro and Officer Tada had probable cause to arrest Defendant for unlawful possession of a gun on the evening of October 16, 2002.  The Court has found that at the time of Defendant's arrest, Sgt. Shimabukuro knew that Defendant had a gun in his vehicle.  Sgt. Shimabukuro's knowledge was based on Defendant's statement as well as Sgt. Shimabukuro's first hand observation of the gun in Defendant's vehicle.  The Court also has found that Officer Tada was aware of Defendant's criminal history at the time of Defendant's arrest.  The Court, therefore, finds that the officers had probable cause to arrest Defendant for unlawful possession of a gun.  See Adams, 407 U.S. at 148.

C.  **Search of Defendant incident to his arrest**

The United States Supreme Court has held that the Fourth and Fourteenth Amendments permit an arresting officer to conduct a warrantless search of a person who has been validly arrested. See Michigan v. DeFillippo, 443 U.S. 31, 35 (1979).  The Court has explained that "[t]he constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence.  The fact of a lawful arrest, standing alone, authorizes a search."  Id. (citation omitted).

The evidence establishes that following Defendant's arrest, Sgt. Shimabukuro and Officer Tada searched Defendant and

30

recovered six .38 caliber bullets from one of his pockets and a pipe from another pocket.  Sgt. Shimabukuro stated that the pipe appeared to be the kind used for smoking "ice," or crystal methamphetamine, and that the pipe contained a small amount of a white powdery substance at the bottom of the bowl of the pipe. The search of Defendant and seizure of evidence from his pockets was a proper search incident to arrest.  See id.

**D.  Seizure of the gun from Defendant's vehicle**

Officer Tada had probable cause to seize the gun from inside Defendant's vehicle, and was justified in doing so on two separate grounds.

First, Officer Tada was justified in seizing the weapon on the basis of the automobile exception to the warrant requirement. It is well settled that where officers have probable cause to search a vehicle, the search "is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained."  Maryland v. Dyson, 527 U.S. 465, 467 (1999) (internal quotations and citation omitted) (emphasis in original).  In concluding that the Fourth Amendment permits law enforcement officers to search a vehicle without a warrant, the Supreme Court has cited to an automobile's mobility and the significantly lower expectation of privacy one has with respect to his automobile.  See California v. Carney, 471 U.S. 386, 391 (1985); Chambers v. Maroney, 399 U.S. 42, 51-52 (1970).

Although the Court finds credible the testimony that officers did not search Defendant's vehicle for other items prior to obtaining a warrant, the Court also finds that Officer Tada could have conducted a lawful search of Defendant's vehicle for the gun on the basis of Defendant's statement to Sgt. Shimabukuro that he had a gun in the vehicle. Pursuant to the automobile exception, the officers did not need a warrant to conduct a lawful search of Defendant's vehicle for the gun. See Dyson, 527 U.S. at 467.

Officer Tada also was justified in seizing the weapon from Defendant's vehicle based on the plain view doctrine. See, e.g., Horton v. California, 496 U.S. 128, 136-37 (1990). The Supreme Court has held that an officer may seize evidence in plain view where (1) there was no Fourth Amendment violation in arriving at the place from which the evidence could be plainly viewed; (2) the officer has a lawful right of access to the evidence; and (3) the incriminating character of the evidence is immediately apparent. Id. In this case, the Court has already found that Sgt. Shimabukuro had reasonable suspicion to justify his brief questioning of Defendant. The evidence establishes that during the course of such questioning, Defendant told Sgt. Shimabukuro that he had a gun in his vehicle, that Sgt. Shimabukuro viewed the gun while passing by the open driver's door to the vehicle, and that Sgt. Shimabukuro conveyed this information to Officer

Tada upon his arrival at the scene.  The evidence also
establishes that on October 16, 2002, Officer Tada was aware that
Defendant had been arrested previously for family abuse and
believed that Defendant had been prosecuted and convicted of
third degree assault.  Officer Tada, therefore, had probable
cause to seize the gun from Defendant's vehicle on the basis of
the plain view doctrine.

The Court finds that Officer Tada had probable cause to
seize the gun from Defendant's vehicle pursuant to the plain view
doctrine and the automobile exception to the warrant requirement.
The Court DENIES Defendant's motion to suppress with respect to
the gun.

**E.    Evidence seized as a result of the execution of the search
warrant for Defendant's vehicle**

On October 17, 2002, the day after Defendant was arrested by
federal officers, a federal search warrant was executed for
Defendant's vehicle.  The search resulted in the recovery of
several ziplock bags containing methamphetamine, as well as a
digital scale, empty ziplock bags, and $109.00 in U.S. currency.
A total of approximately 29.3 grams of methamphetamine were
recovered from Defendant's vehicle.  Defendant does not contest
the propriety of the search warrant for his vehicle, nor does
Defendant contend that the warrant was improperly executed.  It
appears that Defendant seeks suppression of all evidence seized
from his vehicle on the basis of the alleged illegality of

33

Defendant's initial detention and questioning by Sgt. Shimabukuro. The Court has found that Sgt. Shimabukuro's detention and questioning of Defendant was supported by reasonable suspicion. Defendant's motion to suppress evidence seized as a result of the execution of the search warrant for his vehicle is DENIED.

**F.    Defendant's statement to law enforcement officers**

Defendant seeks the suppression of a statement he gave to law enforcement officers on October 18, 2002, two days after Defendant's initial arrest. Defendant does not argue that the statement itself was obtained in violation of Defendant's rights. Defendant, in fact, attached to his suppression motion a copy of the signed form indicating his waiver of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Defendant seeks the suppression of his statement on the basis of the alleged illegality of Defendant's initial detention and questioning by Sgt. Shimabukuro. Having found that Sgt. Shimabukuro's detention and questioning of Defendant was supported by reasonable suspicion, and that Defendant's arrest was supported by probable cause, the Court DENIES Defendant's motion to suppress his statement to law enforcement officers.

<strong><u>CONCLUSION</u></strong>

In accordance with the foregoing,

Defendant's Motion to Dismiss the Indictment is DENIED and

34

Defendant's Motion to Suppress Physical Evidence and
Statement is DENIED.

IT IS SO ORDERED.

DATED:    Honolulu, Hawaii, September 20, 2004.


Helen Gillmor
United States District Judge

United States v. Raymond Nauta Reyes, Crim. No. 03-00370 HG;
Order Denying Defendant's Oral Motion to Dismiss the Indictment
and Denying Defendant's Motion to Suppress Physical Evidence and
Statement

35